**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARK E. BOWMAN, SR.,**

                         **Plaintiff,**

   vs.                                            6:11-CV-01116
                                                       (MAD)

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                         **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

Office of Peter W. Antonowicz            Peter W. Antonowicz, Esq.
148 Dominick Street
Rome, New York 13440
*Attorney for Plaintiff*

Social Security Administration              Dennis J. Canning, Esq.
Office of Regional General Counsel      Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Attorneys for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

     Plaintiff Mark Bowman, brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny his application for supplemental security income ("SSI").

**PROCEDURAL BACKGROUND**

On July 29, 2009, plaintiff protectively filed an application for SSI benefits alleging a disability beginning on May 5, 2008. (Administrative Transcript at p. 138-141).[1] Plaintiff was 50 years old at the time of the application. Plaintiff provided his prior work history from 1993 until 2003 which included work as a driver, personal trainer and housekeeper. (T. 149). Plaintiff claimed that he was disabled due to ruptured discs, leg problems, Hepatitis C, a cyst on his liver and high blood pressure. (T. 158). On October 16, 2009, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on November 9, 2010 and January 5, 2011.[2] (T.19). On April 26, 2011, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 26). The Appeals Council denied plaintiff's request for review on August 17, 2011 making the ALJ's decision the final determination of the Commissioner. (T. 1-6). This action followed.

**DISCUSSION**

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for DIB, plaintiff must establish that her disability commenced on or before the date her insured status expired. 42 U.S.C. §§ 423(a)(1)(A) and (c)(1); 20 C.F.R. § 404.131. The plaintiff carries the initial burden of proving she is disabled

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 10.

[2] The first hearing was adjourned so that plaintiff could retain counsel. (T. 44).

2

within the meaning of the Act. 42 U.S.C. §§ 423(d) (5)(A); *see Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).

There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert*, 311 F.3d at 472) (the plaintiff bears the burden through the first four steps of the analysis); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the day he protectively filed his application, July 29, 2009. (T. 21). At step two, the ALJ concluded that plaintiff suffered from Hepatitis C and degenerative disc disease of the lumbar spine which qualified as "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 21). At the third step of the analysis, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the

3

severity of any impairment listed in Appendix 1 of the Regulations. (T. 22). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "lift no more than 20 pounds at a time with frequent lifting/carry of objects weighing up to 10 pounds; stand for 6 hours out of an 8 hour workday; walk for 6 hours out of an 8 hour workday; and sit for 6 hours out of an 8 hour workday". (T. 22). At step four, the ALJ concluded that plaintiff was capable of performing his past relevant work as a driver/courier. (T. 25). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 26).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ failed to properly apply the treating physician rule; (2) the ALJ improperly afforded significant weight to the opinions of the consultative examining physician; (3) the ALJ improperly assessed plaintiff's credibility; and (4) the ALJ should have elicited testimony from a vocational expert. (Dkt. No. 14).[3]

## I.   Medical Evidence and Assessment of Opinions

Plaintiff argues that the ALJ should have assigned "greater weight" to Dr. Bruce Slagle's opinions as Dr. Slagle was plaintiff's treating physician. Plaintiff also claims that the ALJ improperly assigned substantial weight to the opinion of the consultative examining physician. (Dkt. No. 14, p. 9).

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78–79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). An ALJ may refuse to consider the treating physician's opinion controlling only if he

---

[3] The Court notes that plaintiff's arguments as set forth in Plaintiff's Brief are imprecise and disorganized. T

4

is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir.2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999)).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643–44 (2d Cir.2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

An ALJ may rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of

5

Social Security disability." *Williams v. Astrue*, 2011 WL 831426, at *11 (N.D.N.Y.2011) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(C), 404.1527(f)(2), 416.912(b)(6), 416.913, and 416.927(f)(2)). The ALJ may give significant weight to the opinions of consultative physicians if the conclusions are well supported by clinical evidence; consistent with the overall record and claimant's reported activities are based upon a thorough examination. *See Palaschak v. Astrue*, 2009 WL 6315324, at *6 (N.D.N.Y.2009) (citing 20 C.F.R. 404.1527(f)). If an ALJ relies upon a non-examining reviewer's opinion, that opinion must be supported by the bulk of the record. *See* Social Security Ruling ("SSR") 96–6p, 1996 WL374180, *2 (July 1996); *see also Rocchio v. Astrue*, 2010 WL 5563842, at *14 (S.D.N.Y.2010).

### A.    Dr. Bruce Slagle

In October 2004, plaintiff began treating with Dr. Slagle because he "has not been seen by any doctor for a long time". (T. 239). At that time, plaintiff stated that he had a history of back pain after "some crushed disks from work". He claimed he was receiving pain management and physical therapy. (T. 239). During the initial visit, Dr. Slagle noted no positive findings with respect to plaintiff's back. From May 2005 until December 2009, plaintiff treated with Dr. Slagle on ten occasions for various complaints including malaise, alcohol issues, shoulder discomfort, erectile dysfunction and genital itching. During that time, plaintiff made no complaints of back pain. (T. 215-236).

On December 16, 2009, plaintiff complained of lower back pain. (T. 256). Upon examination, Dr. Slagle noted that plaintiff exhibited "good range of motion". The doctor prescribed hydrocodone for pain. Plaintiff treated with Dr. Slagle in March 2010 and May 2010 but made no complaints of back pain. On December 22, 2010, plaintiff returned to Dr. Slagle complaining of chronic low back pain. (T. 268). Despite the lack of positive findings and a

normal examination, Dr. Slagle scheduled a lumbar MRI, x-rays of the lumbar spine and prescribed Oxycodone. On the same day, Dr. Slagle completed a Clinical Assessment of Pain and opined that plaintiff's pain was "distracting to adequate performance of daily activities or work". (T. 271). Dr. Slagle further concluded that physical activity, such as standing, walking, lifting, carrying and bending, increased plaintiff's pain "causing abandonment of tasks related to daily activities". Dr. Slagle also noted that medication would severely limit plaintiff's effectiveness in the workplace due to drowsiness and inattention.

On January 17, 2011, an MRI of plaintiff's lumbar spine revealed multi-level degenerative change with the most severe findings at the L4-L5 and L5-S1 levels and a small herniations at the L4-5 and L5-S1 levels with mild to moderate effacement of the theca. (T. 273-274).

On March 11, 2011, Dr. Slagle completed another Clinical Assessment of Pain and reported that plaintiff's pain is present to such an extent that he would be "off-task for at least 25% of the time in an 8-hour workday". (T. 275). On May 10, 2011, plaintiff presented for a follow-up. Upon examination, Dr. Slagle noted "good range of motion" in plaintiff's back but advised plaintiff to continue taking Opana. (T. 281).

Here, the ALJ discussed Dr. Slagle's treatment:

> [C]linical findings from Bruce Slagle, M.D., the claimant's treating physician, have primarily been normal. The claimant rarely, if ever, reported that he has problems with his musculoskeletal or respiratory system. In fact, since his alleged onset date, the claimant told his treating physician that he had low back pain and general myalgias on two occasions, once in December 2009 and once in December 2010. (T. 23).

The ALJ addressed Dr. Slagle's December 22, 2010 and March 11, 2011 assessments and explained:

> Dr. Slagle's treatment notes show that the claimant has minimal, if any medical problems when he is off of antiviral medications. The

7

> undersigned has therefore given little weight to Dr. Slagle's opinions.
> (T. 25).

In this context, the ALJ also discussed other medical evidence in the record including plaintiff's treatment at Rome Memorial Hospital in May 2008. The ALJ noted:

> It is important to note that the claimant was admitted to Rome Memorial Hospital in May 2008 after he fell off a ladder. However, the claimant complained of cellulitis and no back problems at that time. There is no indication that he has had any follow-up treatment for chronic back pain related to this injury. (T. 24).

Based upon the record, the Court finds that the ALJ assigned the proper weight to Dr. Slagle's opinions and adequately explained his reasoning. Dr. Slagle's opinions are not supported by Dr. Slagle's own treatment records. The December 2010 opinion was prepared after the doctor examined plaintiff for complaints of back pain. However, prior to that date, plaintiff made no complaints of back pain to Dr. Slagle for one year. Moreover, Dr. Slagle's opinions regarding plaintiff's capabilities do not coincide with his office records, specifically, his consistent finding that plaintiff displayed "good range of motion" in his back. *See Overbaugh v. Astrue*, 2010 WL 1171203, at *5 (N.D.N.Y. 2010) (substantial evidence supported the ALJ's refusal to assign controlling weight to the treating physician's opinion because doctor opined, after only nine visits, that plaintiff was disabled and all subsequent records lack reference to the plaintiff's ability to work). Dr. Slagle's March 2011 opinion is equally unpersuasive. The opinion was not based upon any contemporaneous examination. Moreover, while Dr. Slagle opined that plaintiff's pain was debilitating and would render him "off-task for at least 25% of the time in an 8-hour workday", Dr. Slagle's office notes do not contain any reference to those extensive limitations. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (when a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions)*; see also Wynn v. Astrue*, 617 F.Supp.2d 177, 184 (W.D.N.Y. 2009) (the significant limitations

8

were not supported by objective assessments such as range of motion and strength tests). Dr. Slagle was also asked to identify any medical observations or findings supporting his conclusion but failed to do so.

Although the Court is aware that deference should be accorded to Dr. Slagle's opinions pursuant to the treating physician rule, the ALJ articulated "good reasons" for failing to afford the opinions such weight and substantial evidence in the record supports the ALJ's conclusions. Accordingly, the matter will not be remanded for further consideration of this issue.

**B.     Kalyani Ganesh, M.D. - Consultative Examiner**

Plaintiff argues that the ALJ erred when he assigned "significant weight" to Dr. Ganesh's opinions. On October 12, 2009, Dr. Ganesh performed an orthopedic evaluation of plaintiff at the request of the agency. Dr. Ganesh noted that plaintiff could not squat during the examination but that he displayed a normal gait, could heel/toe walk and was able to ambulate and change for the exam without difficulty. (T. 241). Plaintiff exhibited tenderness in his lumbar spine with flexion at 60 degrees and extension at 10 degrees. Straight leg raising was negative bilaterally. (T. 242). Plaintiff had full range of motion in his hips, knees and ankles and 5/5 strength in his lower extremities. Dr. Ganesh diagnosed plaintiff with chronic lower back pain and opined that he had no gross limitations with sitting, standing or walking and mild-to-moderate limitation for lifting, carrying, pushing and pulling. The ALJ assigned "significant weight" to Dr. Ganesh's evaluation because, it is "generally consistent with the evidence as a whole". (T. 25).

Based upon the record, the ALJ provided adequate reasons for relying upon Dr. Ganesh's opinion and assigned the appropriate weight to the doctor's conclusions. Dr. Ganesh's opinions are supported by objective evidence and consistent with Dr. Slagle's physical examinations. Dr. Slagle consistently found that plaintiff demonstrated "good range of motion" in his lower back

9

and the majority of his clinical findings were negative.  There is no objective medical evidence contradicting Dr. Ganesh's opinion.

The Court finds that the ALJ employed the correct legal standards in assessing the medical evidence.  Substantial evidence supports the ALJ's findings and consequently, remand is not warranted based upon this issue.

## II.     Credibility

Plaintiff vaguely argues that the ALJ improperly assessed his credibility because he relied upon plaintiff's daily activities and "magnif[ied] the significance of isolated references to activities such as golf without specifically addressing the frequency or limitations in conducting the activities".  Plaintiff also claims that the ALJ erred when he concluded that plaintiff was "only taking over-the-counter medications" when, in fact, Dr. Slagle prescribed Opana for plaintiff's pain.

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's

10

statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).  The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82–59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4–*8 (S.D.N.Y. 2003).

On the issue of credibility, the ALJ found that the evidence of record does not fully support the claimant's representations. (T. 23).  The ALJ referenced Dr. Slagle's "primarily normal" clinical findings, sporadic treatment history, incarceration, work history and daily activities as a basis for finding plaintiff's statements "not fully credible".  (T. 23-24).

11

With respect to plaintiff's daily activities, during the hearing, plaintiff testified that he experiences pain every day and has "difficulty doing just about everything". (T. 71-72). The ALJ is not required to accept plaintiff's testimony regarding his daily activities when plaintiff's testimony is unsupported and inconsistent with the clinical findings and daily activities in the record for the relevant time period. *Fanton v. Astrue*, 2011 WL 282383, at *5 (W.D.N.Y.2011). During the course of his treatment, plaintiff's treatment notes/medical records indicate that plaintiff lifted weights and was charged with DWI, did some household chores and lived with/cared for five children. (T. 229, 234, 277). In August 2009, plaintiff stated that he could shop a couple of times a week, drive, swim at the YMCA and golf. (T. 24). Plaintiff's medical records lack any reference to such extreme complaints of pain nor do they indicate that plaintiff's daily activities are limited. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's daily activities.

Plaintiff also claims that the ALJ failed to consider his medication. During the February 2011 hearing, plaintiff testified that he started taking Opana two months prior. (T. 69). However, plaintiff did not testify to experiencing any side effects from that medication and plaintiff's medical records do not contain any reference to any side effects. Accordingly, the ALJ's failure to address Opana is not ground for reversal. *See Rockwood v. Astrue*, 614 F.Supp.2d 252, 282 (N.D.N.Y.2009) (the ALJ did not err when he failed to discuss side effects of medication because the plaintiff's own testimony indicated that the pain medication did not have any side effects).

Based upon the record, substantial evidence supports the ALJ's assessment of plaintiff's credibility.

**III.    Past Relevant Work**

12

Plaintiff claims that the ALJ erred at the fourth step of the analysis when he failed to employ the services of a vocational expert to determine whether plaintiff could perform his past relevant work. Specifically, plaintiff alleges that there was an "inherent contradiction" in the ALJ's finding that plaintiff could perform his past work but with a similar title but different required exertional activities. The Commissioner disagrees and contends that plaintiff's RFC is consistent with his past work as generally performed in the national economy.

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to his previous specific job and an inability to perform his past relevant work generally." *Stanton v. Astrue*, 2009 WL 1940539, at *9 -10  (N.D.N.Y. 2009) (citing *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir.2003) (citing SSR 82-62)). A claimant is not disabled if he can perform his past relevant work, either as he actually performed it, or as it is generally performed in the national economy. *Id.* (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) (noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally")). A claimant may not obtain disability benefits if the claimant can still perform his past work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 1520.  Past relevant work is "either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy." *Id.* (citing Social Security Ruling 82-62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General ("SSR 82-62"), 1982 WL 31386, at *3 (S.S.A.1982)).

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence

13

establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." *Speruggia v. Astrue*, 2008 WL 818004, at *12-13 (E.D.N.Y. 2008). "Pursuant to both case law and [SSR] 82–62, in order to determine at step four whether a claimant is able to perform her past [relevant] work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Sanderson v. Astrue*, 2011 WL 1113856, at *9 (N.D.N.Y. 2011) (citation omitted). The disability claimant bears the burden of proving that neither alternative applies. *See Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." (citation omitted)). If the ALJ finds that the claimant cannot perform the functional demands and duties of his past job as he actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Scharber v. Comm'r of Soc. Sec.* 411 F. App'x 281, 282 (11th Cir. 2011) (citing See SSR 82–61, 1982 WL 31387 (1982)). An ALJ may rely on information contained in the Dictionary of Occupational Titles ("DOT") to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy. *Id*. "[W]here the claimant's specific prior job might have involved functional demands and duties significantly in excess of those generally required for such work by employers in the national economy, the claimant must still demonstrate that, in addition to being unable to perform the excessive functional demands actually required by her former job, she cannot perform the functional demands and job duties of the position as

14

generally required by employers nationwide." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing SSR 82-61 (1982)). The issue herein is not whether plaintiff can do his past relevant work as he actually performed it, rather, whether the ALJ erred when he concluded that plaintiff can still perform work as a driver/courier as the national economy generally performs it. *See Barker v. Astrue*, 2012 WL 476403, at* 9 (10th Cir. 2012) (the ALJ properly based his finding that plaintiff was not disabled on her ability to perform past relevant work as it is performed in the national economy).

Here, the ALJ found that plaintiff's work as a driver/courier delivering boxes for a management company was considered past relevant work. (T. 25, 60). Plaintiff described his work as a driver/courier as follows: he sat for six hours out of the twelve that he worked; lifted boxes weighing twenty to thirty pounds per box. (T. 60-61). The ALJ discussed the Dictionary of Occupational Titles and the description for "deliverer" which requires an individual to lift, carry, push and pull 20 pounds occasionally, up to 10 pounds frequently, and a negligible amount constantly. The ALJ compared the plaintiff's RFC with the physical and mental demands of the work and found that plaintiff could perform such work as it is generally performed in the national economy. (T. 25-26).

Here, the ALJ's RFC analysis is supported by substantial evidence. Consequently, the Court finds substantial evidence to support the ALJ's determination that plaintiff could perform his past relevant work as ordinarily required by employers throughout the national economy.

15

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: November 9, 2012
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge